UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN P.,

           Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00277 EAW

## INTRODUCTION

Represented by counsel, plaintiff John P. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income benefits ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 8; Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further proceedings, and the Commissioner's motion (Dkt. 9) is denied.

**BACKGROUND**

Plaintiff protectively filed his application for SSI on May 2, 2019. (Dkt. 7 at 81).[1] In his application, Plaintiff alleged disability beginning January 1, 2005. (*Id.* at 82-83, 224). Plaintiff's application was initially denied on September 17, 2019. (*Id.* at 92). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Laura Michalec Olszewski on August 18, 2020, and continued on September 16, 2020. (*Id.* at 36-74; 75-80). On September 30, 2020, the ALJ issued an unfavorable decision. (*Id.* at 20-29). Plaintiff requested Appeals Council review, and his request was denied on January 15, 2021, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4

(the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 2, 2019. (*Id.* at 22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: depression, anxiety disorder, bipolar schizoaffective disorder, fibromyalgia, migraines, and asthma. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-24). The ALJ particularly considered the criteria of Listings 3.03, 12.03, 12.04, and 12.06, as well as the effects of Plaintiff's fibromyalgia pursuant to Social Security Ruling ("SSR") 99-2p,[2] in reaching her conclusion. (*Id.* at 23-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c). (*Id.* at 24). The ALJ determined that Plaintiff could "lift and or carry 50 pounds occasionally and 25 pounds frequently" with the following additional limitations:

> [Plaintiff] can sit for six hours in an eight-hour workday, stand and or walk for six hours in an eight hour workday; [he] can frequently climb ramps and stairs, climb ladders and scaffolds; [he] can frequently balance and stoop; [he] should occasionally kneel, crouch and crawl; [Plaintiff] should work in a low stress environment defined as occasional use of judgment, occasional decision-making, and occasional changes in work setting; [he] can perform simple and routine tasks; [he] can have occasional interactions with supervisors, co-workers and the public; and [Plaintiff] can have occasional exposure to respiratory irritants such as dust, odors, fumes and gases and

---

[2]    SSR 99-2p, 64 F.R. 23380-03, a ruling setting forth the criteria for evaluating cases involving chronic fatigue syndrome ("CFS"), was rescinded and replaced by SSR 14-1p in 2014. *See* SSR 14-1p, 2014 WL 1371245, at *1 (April 3, 2014). The SSR that governs fibromyalgia and sets forth guidelines for its evaluation is SSR 12-2p. *See generally* SSR 12-2P, 2012 WL 3104869 (July 25, 2012). Although Plaintiff argues that the ALJ's evaluation was "contrary to regulatory evaluation" (Dkt. 8-1 at 13), Plaintiff does not argue that the ALJ erred at step two in determining that Plaintiff's fibromyalgia is a severe impairment or at step three in not finding that Plaintiff's fibromyalgia met or equaled any Listing.

extreme hot and cold temperatures.

(*Id.*).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 28). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to determine that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of packer, kitchen helper, and material handler. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.     Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that the RFC is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate Plaintiff's fibromyalgia; and (2) the ALJ failed to develop the record regarding Plaintiff's mental health symptoms. (Dkt. 8-1 at 13-27). Because the Court finds that the ALJ erred in her assessment of Plaintiff's fibromyalgia, remand is warranted on this basis.

### A.     ALJ's Evaluation of Plaintiff's Fibromyalgia

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y.

2018) (quotation omitted). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the Commissioner considers the persuasiveness of all medical opinions by reference to the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(1). With respect to "consistency," the regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2). The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at § 416.920c(b). The ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.1520c(b)(2); *see also Rivera v. Comm'r of Soc. Sec. Admin.*, 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. 2020) ("If the ALJ fails adequately to explain the supportability and consistency factors, or bases her explanation upon a misreading of the record, remand is required." (quotation and citation omitted)). The ALJ may—but is not required to—explain how she considered the remaining factors. 20 C.F.R. § 416.1520c(b)(2).

"An ALJ need not recite every piece of evidence that contributed to the decision, so

long as the record permits [the Court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quotation and citation omitted).  In other words, although an RFC need not track any medical opinion, "[i]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) (quotation and citation omitted).

Plaintiff challenges the assessed RFC finding, arguing that the ALJ discredited Plaintiff's subjective complaints and improperly evaluated the medical opinion evidence by "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement," (Dkt. 8-1 at 14), contrary to the applicable regulations.  In addition, Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony regarding his everyday activities as they relate to his fibromyalgia (*id.* at 21).  The Court agrees.

In determining that Plaintiff retained the capacity to engage in medium work, the ALJ considered the medical opinions of Nurse Practitioner ("NP") Marie Lowe, and consultative examiner Harbinder Toor, M.D.

On February 7, 2019, NP Lowe completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form.  (Dkt. 7 at 378-379).  In it, NP Lowe indicated that Plaintiff could not perform work until his anxiety and fibromyalgia symptoms were controlled.  (*Id.* at 379).  NP Lowe also completed a July 23, 2020 medical source statement which noted that

Plaintiff was a patient since April 23, 2019. (*Id.* at 550). She identified diagnoses of fibromyalgia and bipolar disorder with symptoms of fatigue, muscle pain and weakness, and concentrated pain in Plaintiff's arms and legs. (*Id.*). NP Lowe noted that Plaintiff had 11 out of 18 positive trigger points for joint pain. (*Id.*). It is NP Lowe's opinion that Plaintiff would require unscheduled breaks approximately three to four times each day and that his impairments would likely produce "good days" and "bad days." (*Id.* at 552, 553). She opined that Plaintiff would constantly experience pain or other symptoms severe enough to interfere with attention and concentration in a workday and concluded that he is incapable of even low stress jobs. (*Id*. at 551). She estimates that Plaintiff would be absent from work as a result of his impairments more than four days each month. (*Id.* at 553).

In finding NP Lowe's opinions unpersuasive, the ALJ stated:

> Marie Lowe, NP, provided a treating source statement where she cited to fatigue, muscle pain and weakness, and noted that the claimant was incapable of even low stress work (Ex. 18F, p. 4). Moreover, she noted that [Plaintiff] could sit for 2 hours, stand and walk for less than 2 hours (Ex. 18F, p. 5). [Plaintiff] also needed to change positions, and was able to occasionally lift up to 20 pounds occasionally and 50 pounds rarely (Id.). [Plaintiff] was also limited to occasionally moving [his] neck, twisting, stooping, crouching, squatting and climbing stairs (Id. at p. 6). Ms. Lowe limited [Plaintiff] to rarely climbing ladders and missing more than four days of work each month (Id.). Despite being provided by a treating source, this opinion is unpersuasive, as it is inconsistent with the conservative treatment and objective evidence cited in the record, that show unremarkable physical examinations. For similar reasons, Dr. Lowe's opinion for the Wyoming County Department of Social Services that noted [Plaintiff] cannot maintain employment is not persuasive (Ex. 13F, pp. 2, 3; Ex. 17F, p. 14). Moreover, the moderate limitations for standing, lifting, carrying, pushing, pulling, and stair climbing are not consistent with the finding of disability, which is based on a unique standard of disability (Ex. 17F, p. 16; Ex. 13F, pp. 2, 3).

(*Id.* at 26).

Dr. Toor examined Plaintiff on August 26, 2019. (*Id.* at 347). Dr. Toor noted that Plaintiff appeared to be in no acute distress during his examination, with a normal gait, and full range of motion of his joints, which were stable and nontender. (*Id.* at 348). Plaintiff's straight leg test was negative both sitting and supine bilaterally. (*Id.*). Dr. Toor indicated that Plaintiff exhibited some tenderness in the cervical and lumbar spine and noted that Plaintiff had "trigger points for fibromyalgia including occipital area bilaterally, shoulders bilaterally, upper back bilaterally, gluteal trochanter region, [and] knees bilaterally." (*Id.* at 348-49). Dr. Toor assessed mild to moderate limitations in Plaintiff's ability to engage in physical activity such as standing, walking, sitting, bending, lifting, or twisting the cervical spine. (*Id.* at 349).

> The ALJ credited Dr. Toor's opinion stating:
>
> First, a consultative examination with Dr. Harbinder Toor noted normal gait, the ability to walk on heels and toes without difficulty, the ability to squat 50%, and only slight difficulty getting on and off the exam table (Ex. 5F, p. 2). Some limited range of motion and tenderness was cited in the cervical and lumbar spine, but straight leg raising tests were negative and the claimant had a full range of motion in all other joints (Id.). As such, Dr. Toor limited [Plaintiff] had mild to moderate limitations doing physical activities such as standing, walking, sitting, bending, lifting, or twisting the cervical spine (Id. at p. 3). He also cited to headaches that can interfere with [Plaintiff's] routine and noted that [Plaintiff] should avoid irritants or other factors that can precipitate asthma (Id.). Such limitations are consistent with the overall conservative care cited in the record and moderate limitations cited in this detailed examination. Moreover they are consistent with the exams in the treatment notes that are unremarkable (Ex. 1F, p. 3).

(*Id.* at 26).[3]

---

[3] The ALJ did not expressly articulate the level of persuasiveness she assigned to Dr. Toor's opinion, as required. *Scott M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00095-LJV, 2023 WL 1798707, at *2 (W.D.N.Y. Feb. 7, 2023) ("The ALJ failed to articulate how

Although the ALJ found Plaintiff's fibromyalgia to be a severe impairment, acknowledged that the evidence of record indicated that Plaintiff had "a history of fibromyalgia, noting diffuse pain throughout his body[,]" and cited Plaintiff's testimony regarding "specific pain in the neck, back, arms and legs," (*id.* at 25), throughout her decision, the ALJ stressed the lack of objective evidence supporting Plaintiff's limitations (*see, e.g., id.* at 25 ("Overall, the record shows relatively unremarkable clinical records, documenting conservative treatment for his migraines, asthma and fibromyalgia."); *id.* at 26 ("Despite being provided by a treating source, this opinion is unpersuasive, as it is inconsistent with the conservative treatment and objective evidence cited in the record, that show unremarkable physical examinations."); *id.* ("However, the record shows routine care and objective finding on examination do not support the level of subjective complaints."); *id.* ("Such limitations are consistent with the overall conservative care cited in the record and moderate limitations cited in this detailed examination. Moreover they are consistent with the exams in the treatment notes that are unremarkable."); *id.* at 28 ("These opinions are consistent with the routine and conservative care cited in the longitudinal evidence."); *id.* ("While the claimant alleges disability, the treatment notes submitted are conservative

---

persuasive he found Dr. Juriga's opinion, and that was error."). Because it is clear in context that she found the opinion persuasive and the matter is otherwise being remanded, the Court need not resolve whether the error was harmless. *Karli D. v. Comm'r of Soc. Sec.*, No. 5:22-CV-0655, 2023 WL 3004012, at *8 (N.D.N.Y. Apr. 19, 2023) ("In general, remand for Social Security claims is appropriate when the ALJ failed to apply the correct legal standards, including adequately considering and applying the regulatory factors, unless the failure to do was harmless.").

and routine in nature, and the claimant is maintained well with regular treatment.")).

The ALJ's emphasis on the lack of objective findings runs contrary to the principle that an ALJ may not require objective findings in order to establish limitations arising from fibromyalgia. *Lisa E. v. Comm'r of Soc. Sec.*, No. 20-CV-0037MWP, 2021 WL 4472469, at *7 (W.D.N.Y. Sept. 30, 2021) ("Despite the well-settled understanding that fibromyalgia impairments may not manifest in abnormal objective findings, when evaluating the evidence of record, the ALJ repeatedly referenced the lack of abnormal findings during plaintiff's physical examinations."). As the Second Circuit has explained, "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that 'there are no objective tests which can conclusively confirm the disease.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal citation omitted) (quoting *Preston v. Sec. of Health & Human Servs.,* 854 F.2d 815, 818 (6th Cir. 1988)); *see also Lisa v. Sec. of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) ("In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." (quoting *Preston*, 335 F.2d at 817-18)); *Susan C. v. Comm'r of Soc. Sec.*, No. 21-CV-00482, 2023 WL 3191607, at *3 (W.D.N.Y. May 2, 2023) ("[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." (quoting *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014))).

Accordingly, "[w]hen determining an RFC based on fibromyalgia, the ALJ is not

entitled to rely solely on objective evidence—or lack thereof—related to fibromyalgia, but must consider all relevant evidence, including the longitudinal treatment record . . . denying a fibromyalgia-claimant's claim of disability simply because such evidence is not corroborated by objective medical evidence is reversible error." *Ian S. v. Comm'r of Soc. Sec.*, No. 20-CV-6022-A, 2021 WL 3292203, at *3 (W.D.N.Y. Aug. 2, 2021) (quotation and citation omitted); *see also Campbell v. Colvin*, No. 5:13-CV-451 GLS/ESH, 2015 WL 73763, at *6 (N.D.N.Y. Jan. 6, 2015) ("A 'mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability,' but denying a fibromyalgia-claimant's claim of disability based in part on a perceived lack of objective evidence is reversible error." (quoting *Rivers v. Astrue*, 280 Fed. App'x 20, 22 (2d Cir. 2008))).

As noted by Defendant, SSR 12-2p "provides direction in assessing fibromyalgia." (Dkt. 9-1 at 16); SSR 12-2P, 2012 WL 3104869, at *2 (July 25, 2012). Specifically, SSR 12-2p directs that "longitudinal records reflecting ongoing medical evaluation and treatment from acceptable medical sources are especially helpful in establishing both the existence and severity of [fibromyalgia]." 2012 WL 3104869, at *3. While a consultative examination can be useful, SSR 12-2p provides that "[b]ecause the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the [consultative examination] has access to longitudinal information about the person." *Id.* at *4; *see also Morris v. Berryhill*, No. 1:16-CV-00973(MAT), 2018 WL 2979095, at *5 (W.D.N.Y. June 14, 2018) ("The Second Circuit has expressly stated in the context of a claimant with fibromyalgia that 'ALJs should

not rely heavily on the findings of consultative physicians after a single examination.'" (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013))).

Here, the ALJ did not mention SSR 12-2p in her decision. While that alone might not constitute error warranting remand, it contributes to a conclusion that she erroneously placed undue emphasis on the lack of objective evidence in contravention of the guidance provided by the regulations. As noted, the ALJ rejected the opinion of treating provider NP Lowe for the sole reason that her opinion was "inconsistent with the conservative treatment and objective evidence cited in the record," and instead relied on Dr. Toor's singular examination of Plaintiff in crafting the RFC. *See Hyer v. Colvin*, No. 3:12-CV-0054 GTS/DEP, 2013 WL 1193444, at *7 (N.D.N.Y. Feb. 27, 2013) ("Importantly, the ALJ's decision, particularly regarding the conservative level of treatment prescribed, fails to recognize the elusive nature of fibromyalgia."), *report and recommendation adopted*, No. 3:12-CV-0054 GTS/DEP, 2013 WL 1193431 (N.D.N.Y. Mar. 22, 2013). To be sure, pursuant to SSR 12-2p, the ALJ may consider a consultative examiner's opinion—especially where, as here, the consultative examiner has access to longitudinal information about a claimant. SSR 12-2P, 2012 WL 3104869, at *5. However, it is not clear from the ALJ's decision whether in assigning Dr. Toor's opinion more persuasiveness than NP Lowe, the ALJ considered the presumption set forth in SSR 12-2p favoring longitudinal treatment records for cases where fibromyalgia is present or acknowledged the unique challenges related to an assessment of fibromyalgia symptoms. *See* SSR 12-2P, 2012 WL 3104869, at *6 ("For a person with [fibromyalgia], [the SSA] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so

that a person may have 'bad days and good days.'").

Further, to the extent that the ALJ's decision rested on her assessment of Plaintiff's testimony, it appears that she may have mischaracterized some of Plaintiff's testimony regarding his own mobility. For example, the ALJ found Plaintiff capable of frequently climbing ramps and stairs and described his testimony as stating that he "often takes the stairs from his third floor apartment when he goes out to smoke cigarettes." (Dkt. 7 at 27). However, Plaintiff testified that he either uses the stairs or elevator when he leaves his apartment five to six times per day to smoke cigarettes. (Dkt. 7 at 47-48). Plaintiff did not testify as to the relative frequency with which he takes the stairs compared to the elevator, nor did he describe his stair use as "often." (*See id.*). He stated merely that he climbs stairs "slowly" and that he "[has his] good days and [he has his] bad days with that," and takes the stairs when he is able in order to try to remain fit. (*Id.* at 47, 54). But there is no clear indication from Plaintiff's testimony as to the frequency or success he experiences using the stairs in his apartment. Moreover, Plaintiff's testimony that he has "good days" and "bad days" is consistent with the characterization of fibromyalgia symptoms in SSR 12-2p such that Plaintiff's use of the stairs does not discount his statements of physical symptoms and pain or demonstrate his capabilities for stair use on a daily basis. *See* SSR 12-2P, 2012 WL 3104869, at *6 ("[T]he symptoms of FM can wax and wane so that a person may have 'bad days and good days.'"); *see also Carly S. v. Comm'r of Soc. Sec.*, No. 21-CV-00335-FPG, 2023 WL 4345787, at *5 (W.D.N.Y. July 5, 2023) ("For a person with [fibromyalgia], [the SSA] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'"

(quoting *Clasen v. Colvin*, No. 3:13-CV-1390 (GLS/ESH), 2015 WL 1312548, at *3 (Mar. 24, 2015)). For these reasons, it is unclear how the ALJ concluded that Plaintiff's testimony regarding his use of the stairs would be inconsistent with the symptoms of fibromyalgia to the extent Plaintiff alleges. *Ian S.*, 2021 WL 3292203, at *4 (W.D.N.Y. Aug. 2, 2021) ("The ALJ 'failed to consider the uniquely subjective nature of the Plaintiff's fibromyalgia condition and selectively cited from the record in discrediting [his] complaints.'" (quoting *Cabibi*, 50 F. Supp. 3d at 238)); *Morris v. Berryhill*, No. 1:16-CV-00973(MAT), 2018 WL 2979095, at *4 (W.D.N.Y. June 14, 2018) ("This Court has noted that [i]n cases where fibromyalgia is the alleged disability, a claimant's testimony, regarding her symptoms from the disorder, should be given increased importance in the ALJ's determination of whether the claimant is disabled." (quotation and citation omitted)). For all of these reasons, remand is warranted.

### B. Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional argument why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional

arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent this matter is remanded for further proceedings. The Clerk of Court is directed to enter judgment and to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 5, 2023
       Rochester, New York